UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **KENYON A COWART** | **CASE NO. 3:23-CV-00343** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **COURTESY OF RUSTON L L C** | **MAG. JUDGE PEREZ-MONTES** |

**MEMORANDUM RULING**

Pending before the Court is a Motion for Summary Judgment [Doc. No. 28] filed by Defendant, Courtesy of Ruston, LLC ("Courtesy" or "Defendant"). *Pro se* Plaintiff Kenyon A. Cowart ("Cowart" or "Plaintiff") filed an Opposition [Doc. No. 30]. Courtesy filed a Reply [Doc. No. 32].

For the reasons set forth herein, the Motion for Summary Judgment filed by Courtesy is **GRANTED**, and Cowart's claims against Courtesy are **DISMISSED WITH PREJUDICE**.

I.  **FACTS AND PROCEDURAL BACKGROUND**

Courtesy is an automobile dealership in Ruston, Louisiana.[1] Courtesy sells Chrysler vehicles and maintains a service department.[2] The service department includes a Service Manager who oversees the operations, Service Advisors who greet and inquire customers about their visit, Lube Technicians who perform oil changes, and Service Technicians who inspect vehicles and make needed repairs.[3] The amount Service Technicians earn depends on the number of work assignments they are given.[4] Chrysler requires a Chrysler-certified technician to address the customer's concern, and Chrysler will not pay the dealership for services on vehicles under

---

[1] [Doc. No. 28-1, ¶ 3].
[2] [*Id.*]
[3] [*Id.* at ¶ 5].
[4] [Doc. No. 28-1, ¶ 8].

1

warranty if the work is performed by a non-certified technician.[5] Further, to receive work assignments, one must be at work during their working hours.[6] There are four different levels to become Chrysler-certified. Each level depends on the training completion and skill of the technician. The description of each level are as follows:

- Level 0 evidences that the technician is proficient in basic workplace safety, use of scan tools, customer relations, new car prep, and understanding the manufacturer's unique terminology.[7]
- Level 1 evidences that the technician is semi-skilled in (1) engine repair and performance, (2) automatic transmission, (3) driveline, (4) chassis, (5) electrical and body systems, (6) A/C and heating, and (7) diesel.[8]
- Level 2 evidences that the technician is skilled in the aforementioned seven areas.[9]
- Level 3 indicates the technician is considered a brand-specific highly skilled technician in the aforementioned seven areas.[10]

Courtesy makes clear that the higher level of certification, the more profit to the business.[11]

Cowart was hired as Service Technician on or about February 4, 2020, by Mike Slater ("Slater"), a Sales Manager for Courtesy.[12] Cowart previously served in the Army and worked at Mazda, Nissan, and Toyota dealerships.[13] Cowart had five Service Technician co-workers and one Service Manager. All five of the Service Technicians achieved at least a Level 0 certification in all of the seven technical skill areas. [14] As shown in the Technician Skill Area Completion Level Report for February 2020, Cowart was the only Service Technician not certified by Chrysler in any category.[15]

---

[5] [*Id.* at 10].
[6] [Doc. No. 28-1, ¶ 12].
[7] [Doc. No. 28-3, ¶ 7].
[8] [*Id.* at ¶ 8].
[9] [*Id.* at ¶ 9].
[10] [*Id*. at ¶ 10].
[11] [*Id*. at ¶ 14].
[12] [Doc. No.28-5, p. 5].
[13] [*Id.* at pp. 4, 7, and 8].
[14] [Doc. No. 28-3, ¶ 18].
[15] [Doc. No. 28-7, p. 8].

Bobby Williams ("Williams") was Cowart's immediate supervisor and the Service Manager at Courtesy.[16] Williams allowed Cowart to modify his work hours from 8 a.m. to 4 p.m. for childcare purposes, with the expectation that Cowart was to be punctual and consistent during those hours.[17] However, Williams stated despite this expectation, Cowart routinely showed up late, left early, or some days, did not show up at all.[18] Williams declared he had several conversations with Cowart about his work schedule.[19] Further, Williams had numerous conversations with Cowart encouraging him to achieve at least a Level 0 certification.[20] Initially, Williams claimed that Cowart expressed no desire in doing so.[21] Eventually, however, Cowart did complain of difficulty logging into the system to advance his training. Yet, Williams stated the alleged computer issues would not have prevented Cowart from completing training requirements.[22]

During Cowart's time of employment, his co-workers were completing the Chrysler training and continuously leveling up in knowledge and skills.[23] One employee advanced from Level 1 to Level 2 certification and others completed several online tasks to facilitate advancement to the next level.[24] Williams observed Cowart "[misdiagnosing] the problems with customers' vehicles, customers [had] to come back to the dealership because work Cowart performed did not resolve their concern, and Courtesy was required to give customers discounts or refunds associated with Cowart's work."[25] Despite Williams' reasons, Cowart claims he was given less work assignments because of race and supports that argument with evidence of two white employees

---

[16] [Doc. No. 28-2, ¶ 3].
[17] [*Id*. at ¶ 8].
[18] [*Id.* at ¶ 15].
[19] [*Id.* at ¶ 16].
[20] [*Id*. at ¶ 9].
[21] [*Id*. at ¶¶ 9, 11, 12].
[22] [*Id.* at ¶ 11].
[23] [Doc. No. 28-1, ¶ 15].
[24] [*Id*.]
[25] [Doc. No. 28-7, p. 10; Doc. No. 28-2, ¶ 13].

that were hired after Cowart who were given more work assignments. It is undisputed that John Pritt ("Pritt") and Christa Rockett ("Rockett") were given more work assignments, however, both had at least a Level 1 certification.

Cowart further declares that he complained to four people about not getting work assignments, yet Mike Slater is the only person to whom Cowart claims he conversed with regarding racial discrimination.[26] It is uncontested that Cowart never had a conversation with Williams regarding any form of racial discrimination.[27] Further, it is undisputed that Cowart was not the only African American employed by Courtesy.[28]

In August of 2020, Williams discussed with Cowart his untimeliness, lack of effort to obtain certification, and misdiagnosis on cars.[29] Williams states during one particular conversation he informed Cowart that if he wanted to maintain his job, he needed to become Chrysler-certified.[30] Cowart continuously reasserts in his deposition that he was not hired to do "online training."[31] Despite Williams' ultimatum, Cowart never completed a Level 0 certification, and Williams terminated Cowart on August 24, 2020.[32]

After Cowart's termination from Courtesy, Cowart stated he did not immediately begin looking for work, allegedly because of the pandemic.[33] Cowart eventually began to look for work in late 2020, but he denied a job offer for a school bus mechanic due to personal reasons.[34] In

---

[26] [Doc. No. 28-5, p. 23-25].
[27] [*Id*.]
[28] [Doc. No. 28-1, ¶ 17].
[29] [Doc. No. 28-2, ¶ 18].
[30] [Doc. No. 28-2, ¶ 18].
[31] [Doc. No. 28-5, p. 27].
[32] [Doc. No. 28-2, ¶ 20].
[33] [Doc. No. 28-5, p. 37].
[34] [*Id.* at p. 37-39].

January of 2021, Cowart began to work as a mechanic from his home, and tax records reflect that he reported more earnings compared to his employment with Courtesy.[35]

Cowart filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination, termination, and retaliatory discharge, which the EEOC dismissed and issued a notice of right to sue.[36] On March 15, 2023, Cowart filed this lawsuit against Courtesy alleging disparate treatment due to his race based upon Courtesy giving him fewer work assignments than his white counterparts and discriminatory termination.[37] Further, Cowart seemingly asserts a claim for retaliatory discharge.[38]

On May 24, 2024, Courtesy filed the instant Motion for Summary Judgment, moving the Court to dismiss Cowart's claims of racial discrimination, termination, and retaliatory discharge. Further, in the event the Motion is denied, Courtesy asks the Court to find that Cowart cannot recover lost wage damages.[39] Cowart opposes the Motion with an unsworn declaration and supports his Opposition with separation notices from the Army.[40]

The issues have been briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.,*

---

[35] [Doc. No. 28-6, ¶ 3].
[36] [Doc. No. 1-2].
[37] [Doc. No. 1].
[38] [*Id.*]
[39] [Doc. No. 28].
[40] [Doc. Nos. 30, 30-1].

477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate."

*Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

### B. *Pro Se* Leniency

The pleadings of *pro se* litigants are held to a more lenient standard than those of attorneys and are construed liberally to prevent a loss of rights that might result from inartful expression. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *Cledera v. United States*, 834 Fed. App'x 969, 972 (5th Cir. 2021) (citing *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006)). However, *pro se* plaintiffs are required to plead factual allegations that rise above a speculative level, and courts should not create causes of action where none exist. *Chhim v. University of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016); see, also, *Taylor v. Books A Million, Inc.*, 296 F.3d at 378; *Cledera v. United States*, 834 Fed. App'x at 972).

Cowart failed to produce competent summary judgment evidence to oppose Courtesy's Motion. However, because Cowart is *pro se* and alleged an EEOC charge of race discrimination, termination, and retaliatory discharge, the Court will analyze the issues below.

### C. Analysis

#### 1. Disparate Treatment and Discriminatory Termination Claims

Cowart brings claims for racial discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq. Title VII prohibits employers from discriminating

7

against employees on a number of grounds, including race. 42 U.S.C.§ 2000. To establish a *prima facie* case of discrimination, the plaintiff must either present direct evidence of discrimination or, in the absence of direct evidence, rely on circumstantial evidence using the *McDonnell Douglas* burden-shifting analysis. Under *McDonnell Douglas*, the plaintiff carries the burden to prove that (1) he belongs to a protected class; (2) he was qualified for the position at issue; (3) he was the subject of an adverse employment action; and (4) he was replaced by someone outside his protected class or was treated less favorably than other similarly situated employees outside his class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); see also *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse-employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer can show a legitimate, non-discriminatory reason for the adverse-employment action, the presumption of discrimination disappears, and the burden shifts back to the plaintiff to show either the proffered reason was a pretext for discrimination or that the plaintiff's protected status was another motivating factor for the decision. *Davis v. Dall. Area Rapid Transit,* 383 F.3d 309, 317 (5th Cir.2004). To overcome a legitimate, nondiscriminatory reason for termination, the plaintiff must show something beyond disagreement with the employer's decision. *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("Disparate treatment of similarly situated employees is one way to demonstrate unlawful discrimination and retaliation.")

    a. *Prima Facie* **Case of Disparate Treatment**

There is no direct evidence that Cowart was given less work assignments because of his race. However, the inquiry does not end there. As stated above, if Cowart cannot succeed on his

burden of proof with direct evidence of discriminatory motive, he can still rely on indirect evidence. *McDonnell Douglas*, 411 U.S. at 802.

Courtesy argues Cowart cannot prove the fourth element of his *prima facie* case—that he was treated less favorably than similarly situated employees. To satisfy the fourth prong of a *prima facie* case, a plaintiff must show (a) he was replaced by someone outside his protected class, or (b) he was treated less favorably than other similarly situated employees outside his class, under nearly identical circumstances. *McDonnell Douglas*. Necessarily, then, Cowart must show that Courtesy gave preferential treatment to another employee outside the protected class under nearly identical circumstances. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

Here, Cowart claims that he was treated less favorably because his white counterparts were given more work assignment than he and thus, he was treated less favorably than similarly situated employees. Nonetheless, Cowart fails to acknowledge the comparators' job descriptions, experience, qualifications, and skill. Although Pritt was also a Service Technician, Pritt had obtained far more certifications than Cowart. In fact, Pritt had obtained Level 1 for automotive transmission, driveline, electrical and body systems, and A/C and heating; Level 2 for engine repair and performance, and Level 3 for chassis. Additionally, Rockett's job title was Lube Specialist, which is divergent to a Service Technician. Rockett had also obtained Level 0 certification shortly after being hired. Moreover, both employees had prior experience working at a Chrysler dealership. Contrary to both employees, Cowart never obtained a Level 0 certification. Nor was he ever hired to be a Lube Specialist. Thus, he cannot reasonably claim that he was "similarly situated" to these employees as the element so requires.

Consequently, the Court finds Cowart failed to satisfy this prong of the analysis because he has not shown that he was treated less favorably than other similarly situated employees outside

his class, under nearly identical circumstances, with regard to being given less work assignments than his white counterparts.

However, assuming *arguendo* that Cowart established a *prima facie* case of racial discrimination, the Court will next consider whether Courtesy produced a legitimate, nondiscriminatory reason for the adverse-employment action, and, if so, whether Cowart carried his burden of showing either that the proffered reason was a pretext for discrimination or that Cowart's protected status was another motivating factor for the decision.

### b. Legitimate, Non-Discriminatory Reason and Pretext

The Court finds that Courtesy has clearly articulated a legitimate, non-discriminatory reason for giving less work assignments to Cowart. Cowart does not dispute that he was told he needed to obtain at least Level 0 certification to get more work assignments and maintain his job. Courtesy only makes a profit from Chrysler when certified technicians perform work under warranty. Because Cowart never obtained at the least a Level 0 certification, Courtesy was not getting paid for any work he did under warranty repairs. In addition, it is not surprising that to obtain more work assignments, one must actually be at work. As a result, showing up to work on a sporadic basis and/or not being punctual will inherently result in less work assignments given and produced. Furthermore, Courtesy states Williams observed multiple instances where Cowart misdiagnosed issues with customers' vehicles. As a result of the misdiagnosis, Courtesy lost profit and customers on several occasions. To cure said issues and prevent further misdiagnoses, Williams encouraged Cowart to complete his training. Again, Cowart failed to do so.

For the reasons above, it is clear that Courtesy has given legitimate, nondiscriminatory reasons for its decision to provide Cowart with less work assignments than his white counterparts.

At this point, Cowart bears the ultimate burden to show Courtesy's reason for less work assignments is pretext for race discrimination. See *Goudeau v. National Oilwell Vacro, L.P.,* 793 F.3d 470, 476 (5th Cir. 2015). To do so, Cowart must "show something beyond disagreement with the employer's decision." *Wilson v. New Wendy's, Inc.*, No. 3:18-CV-01049, 2019 WL 6247823, at *4, 6 (W.D. La. 11/20/19) (citing *Bryant v. Compass Grp. USA Inc*., 413 F.3d 471, 478 (5th Cir. 2005)). A plaintiff can establish pretext by either evidence of disparate treatment or by showing "the employer's proffered explanation is false or 'unworthy of credence.'" *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015). Cowart must produce substantial evidence of pretext in order to survive a motion for summary judgment. *Auguster v. Vermilion Parish School Board*, 249 F.3d 400, 402–403 (5th Cir. 2001). A plaintiff's subjective belief that he was the victim of intentional discrimination is insufficient to create an inference of discriminatory intent. *Roberson v. Alltel Information Services,* 373 F.3d 647, 654 (5th Cir. 2004). It is inherent to note that employment discrimination laws were "not intended to be a vehicle for judicial second-guessing of employment decisions nor [are they] intended to transform the courts into personnel managers." *Moss v. BMC Software, Inc*., 610 F.3d 917917, 926 (5th Cir. 2010).

Here, Cowart claims that he was discriminated against based on his race because of the alleged disparate treatment in getting less work assignments. Yet, Cowart's subjective belief that he was discriminated against due to less work assignments does not amount to "substantial evidence." *Laxton v. Gap Inc*., 333 F.3d 572, 579 (5th Cir. 2006). Again, Cowart was not the only African American hired by Courtesy, and even if he were, he did not provide the Court with any other sufficient evidence to show that Courtesy's legitimate, nondiscriminatory reasons for less work assignments were pretextual.

Accordingly, the Court **GRANTS** Courtesy's motion for summary judgment as to Cowart's disparate treatment claim.

### c. *Prima Facie* Case of Discriminatory Termination

Cowart further claims that he was terminated because of his race.[41] Courtesy claims in its Motion that it had legitimate, nondiscriminatory reasons for Cowart's termination.

Because Cowart provides no direct evidence that Courtesy's termination was based on race, the *McDonnell Douglas* burden-shifting framework will apply. As asserted above, Courtesy concedes for the purposes of this Motion that Cowart can establish the first three elements of his *prima facie* case but cannot satisfy the fourth—that he was treated less favorably than a similarly situated employee outside of his protected class under nearly identical circumstances.

In *Walker v. Hitchcock Independent School Dist.*, 508 F.App'x 314, 319 (5th Cir. 2013), the Fifth Circuit held that the plaintiff could not satisfy the fourth element based upon her own subjective belief that she was treated differently than white co-workers who were similarly situated." Cowart's subjective belief that his two white counterparts would not have been terminated for the reasons he was is not only a result of his own subjective belief, but it is also false. Again, Cowart was terminated for several reasons, and it is unfounded to think that if his white counterparts were in nearly identical circumstances as Cowart that Courtesy would not have taken the same measurements of termination. Cowart was the only technician who had not obtained a Level 0 certification. Moreover, Cowart has not, and cannot, identify a non-African American employee who failed to attain any certification level and has the same performance and attendance problems he did that Courtesy did not terminate.

---

[41] [Doc. No. 28-5, p. 31].

Accordingly, the Court finds that Cowart failed to satisfy this prong of the analysis because he failed to produce any evidence that supports his discriminatory termination argument, and the Court cannot entertain such.

Assuming *arguendo* that Cowart has established a *prima facie* case of racial termination, the Court will next consider whether Courtesy has produced a legitimate, nondiscriminatory reason for the adverse-employment action, and, if so, whether Cowart has carried his burden of showing either that the proffered reason was a pretext for discrimination or that Cowart's protected status was another motivating factor for the decision.

### d. Legitimate, Non-Discriminatory Reason for Termination and Pretext

The Court finds that Courtesy has clearly articulated a legitimate, non- discriminatory reason for terminating Cowart for the same reasons set out in subsection (b) of this Ruling. Cowart asserts Courtesy's reasons were incorrect but does not provide the Court with any evidence to show the proffered reasons were pretextual. To briefly repeat the facts, Cowart does not dispute that he was told he needed to obtain at least Level 0 certification to maintain his job. Cowart was routinely late to work. Additionally, Courtesy asserts Williams observed multiple instances where Cowart misdiagnosed problems with customer vehicles, although Cowart seemingly argues these accusations are pretext for racial discrimination. However, Cowart fails to produce any evidence to the contrary. In any event, as a result of several misdiagnoses, Courtesy lost profit and customers. Williams encouraged Cowart to complete his training in order to cure his defective performance and Cowart failed to do so stating that he was not hired to do online training.

Cowart must produce substantial evidence of pretext in order to survive a motion for summary judgment. *Auguster,* 249 F.3d at 402–403. A plaintiff's subjective belief that he was the victim of intentional discrimination is insufficient to create an inference of discriminatory intent.

*Roberson,* 373 F.3d at 654. Cowart's subjective belief does not amount to "substantial evidence" to prove pretext. *Laxton*, 333 F.3d at 579.

Accordingly, the Court **GRANTS** Courtesy's motion for summary judgment as to Cowart's discriminatory termination claim.

### 2. Retaliatory Discharge

It is unclear whether Cowart is asserting a claim for retaliatory discharge. However, to the extent that Cowart is asserting such, the Court will analyze the claim below. In its Motion, Courtesy asserts Cowart's claim for retaliatory discharge should be dismissed because Cowart never told the Sales Manager he believed race was impacting the number of work assignments he was receiving. Cowart does not dispute this contention in his Opposition, but states in his Complaint that the shop foreman and supervisor were holding out work assignments and that "he would complain every week to upper management about [Cowart] not getting any work and nothing was done about it."[42]

To succeed on a Title VII retaliation claim, Plaintiff must establish a *prima facie* case of retaliation by showing that: (1) he engaged in activity protected by Title VII; (2) he suffered an adverse employment action by Defendant; and (3) a causal connection exists between the protected activity and the adverse employment action. *See Davis v. Fort Bend Cnty.*, 765 F.3d 480, 489 (5th Cir. 2014). If Plaintiff cannot support all three elements of a *prima facie* case of retaliation, then summary judgment for Defendant is appropriate. *See Stewart v. Miss. Transp. Comm'n.*, 586 F.3d 321, 331 (5th Cir. 2009). Once the plaintiff establishes a *prima facie* case of unlawful retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir.

---

[42] [Doc. No. 1].

1998). The burden shifts back to the plaintiff who must produce evidence "that would permit a reasonable trier of fact to find that the proffered reason is pretext for retaliation." *Id.*

Courtesy concedes that Plaintiff can establish the first two elements of his retaliation claim but cannot satisfy the third element—a causal link. A "causal link" is established when the evidence demonstrates that "the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Sherrod,* 132 F.3d at 1122. According to the evidence before the Court, Slater is the only person that Cowart complained to about race issues. It is undisputed that Williams, the supervisor that terminated Cowart, never had a conversation with Cowart regarding his racial discrimination concerns. Therefore, the question becomes how could Williams terminate Cowart for complaining of racial discrimination, when he was unaware that Cowart was allegedly encountering such discrimination? The Court is unaware of any evidence that Slater and Williams ever discussed Cowart's conversations between the two, and Slater was not employed by the same department of Cowart and Williams.

Cowart cannot and has not offered a genuine issue of material fact to defeat Defendant's summary judgment on the retaliatory discharge claims. Thus, Defendant's Motion on this issue is **GRANTED.**

### III. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED, ADJUGED, AND DECREED** that Courtesy's Motion for Summary Judgment [Doc. No. 28] is **GRANTED** and Cowart's claims against Courtesy are **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 18th day of July 2024.

                                                Terry A. Doughty
                                                United States District Judge